UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE COMPUTER ASSOCIATES 2002
CLASS ACTION SECURITIES LITIGATION

02-CV-1266 (TCP)
05-CV-4430 (TCP)
**MEMORANDUM AND ORDER**

-----------------------------------------------------------X

PLATT, District Judge.

Before the Court are two motions: (i) a letter motion by the United States requesting that the Court limit the scope of Plaintiffs' Special Interrogatories to Computer Associates, and (ii) a motion by the United States requesting that the Court stay Plaintiffs' Rule 30(b)(6) motion until the conclusion of a related criminal case. For the reasons discussed below, both motions are GRANTED.

**Background**

The Court assumes familiarity with (i) the underlying facts of this long-running case allegedly involving securities fraud by Computer Associates ["CA"], and also with (ii) previous decisions of this Court regarding these matters. See, e.g., In re Computer Assoc. Class Action Secs. Litig., 75 F. Supp. 2d 68 (E.D.N.Y. 1999).

A.   The Special Interrogatories

1

The Special Interrogatories which the United States seeks to limit stem from an action that was initiated in the District Court of Dallas County, Texas, on August 9, 2004, by Sam Wyly ("Wyly") and Ranger Governance Ltd. ("Ranger") (collectively, "Plaintiffs"). That action was removed to the United States District Court for the Northern District of Texas on September 10, 2004 (Docket 04-CV-1984), and transferred to this Court on September 1, 2005 (Docket 05-CV-4430).

On June 2, 2005, in the District Court for the Northern District of Texas, Plaintiffs served on CA a Notice of Deposition under Federal Rule of Civil Procedure 30(b)(6) seeking the testimony of a corporate representative with respect to, <u>inter alia</u>, CA's past accounting practices. CA moved for a protective order and the United States moved for a stay of the deposition pending the resolution of <u>United States v. Sanjay Kumar and Stephen Richards</u>, (04-CR-846), the criminal action pending in the Eastern District of New York charging CA's former CEO and head of worldwide sales, respectively, with securities fraud, obstruction of justice, and perjury. On July 22, 2005, Magistrate Judge Jeff Kaplan provisionally granted both motions and ordered that Plaintiffs submit to CA and the Government a set of interrogatories within the scope of FRCP 26(b) and in accordance with the Court's directions at a hearing held on July 8, 2005 (the "Protective Order").

On August 31, 2005, Plaintiffs served their Special Interrogatories pursuant to the Protective Order. On September 12, 2005, the United States moved by letter in this Court requesting that the Court limit CA's responses to the Special Interrogatories to: (i) facts admitted in the public Informations against and guilty-plea allocutions of the former CA employees who had already pleaded guilty in the related criminal case, and (ii) facts contained in the Second Superseding Indictment against defendants Kumar and Richards. The United States argued that the disclosure of the information sought by Plaintiffs was unnecessary given the scope of the actual dispute in Plaintiffs' lawsuits and would be severely damaging to the Government's case against Kumar and Richards. Plaintiffs responded by letter dated September 16, 2005, that the Special Interrogatories fully comply with the Protective Order and should not be limited by the Court. CA also wrote the Court by letter dated September 23, 2005, in support of the Government's request and in opposition to Plaintiffs' request, noting that Plaintiffs' request was both improper and premature.

B.   The 30(b)(6) Deposition Notice

In connection with the litigation pending in this Court under Docket 02-CV-1226 and Docket 03-CV-4199, on June 14, 2005, the Court held a telephonic conference to discuss a potential Rule 60(b) motion, which concerned, among other things, "23 boxes" of documents referenced in a Wall Street Journal

article.  The Court ordered that those "23 boxes" be turned over to Plaintiffs' counsel and left open the possibility that the Court would permit depositions of one or two specifically identified individuals.  On June 24, 2005, Plaintiffs Wyly, Ranger, Bert Vladimir, and Irving Rosenzeig (collectively "Derivative Plaintiffs") served a Rule 30(b)(6) deposition notice, seeking testimony concerning CA's knowledge of and dates of discovery of, and information about, the facts set forth in the Deferred Prosecution Agreement ("DPA") entered into by CA and the United States.  On July 14, 2005, the Derivative Plaintiffs served an amended deposition notice (the "Deposition Notice") seeking testimony regarding the DPA, the "23 boxes," CA's alleged failure to produce the "23 boxes," financial statements restated in CA's Form 10-K for the year ending March 31, 2005, and facts set forth in the Superseding Indictment in the criminal action pending against Kumar and Richards.

On July 15, 2005, the United States served the instant motion seeking a stay of the Derivative Plaintiffs' Rule 30(b)(6) deposition, at least until the conclusion of the criminal case.  The United States argued that the depositions would prejudice the upcoming prosecution of Kumar and Richards in that: (i) the subject matter of the deposition concerns the core issues in the criminal trial, (ii) the truth-seeking process of the criminal trial would potentially be corrupted by the elicitation of inaccurate or incomplete information, and (iii) the defendants

may be afforded an opportunity to tailor their testimony in the criminal trial based upon the record established in the civil deposition.

The Derivative Plaintiffs argued in response that the United States cannot meet the very high burden courts impose when deciding whether a stay of a civil action is appropriate, given that the Derivative Plaintiffs do not seek to depose either Kumar or Richards. The Derivative Plaintiffs also argued that their interests will be prejudiced if the civil action is stayed, whereas there will be no prejudice to the United States. The nature of the prejudice asserted by the Derivative Plaintiffs is that they "are entitled to vindicate their rights" in a "'speedy and efficient' manner" (Pl.'s Opp. Mem. at 16-17), and a stay of the civil litigation would results in a delay of approximately one-year.

**Discussion**

A.  <u>Applicable Legal Standards</u>

Rule 26(c) of the Federal Rules of Civil Procedure allows district courts to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of "good cause." FED. R. CIV. P. 26(c). It is well settled that this Rule gives district courts the discretion to order that: the discovery may be had only on specified terms and conditions; the scope of the discovery may be limited to

5

certain matters; or the discovery may not be had at all. Id.; see, e.g., Moore v. Painewebber, Inc., 1997 WL 12805, at *1 (S.D.N.Y. Jan. 14, 1997); In re WRT Energy Sec. Litig., 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996); Hatchette Distrib., Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991). The movant bears the burden of establishing good cause for such protective order. See Moore, 1997 WL 12805, at *1.

B.  The Special Interrogatories

In its first motion under Rule 26(c), the United States seeks an order modifying the Protective Order and limiting CA's responses to the Special Interrogatories to information that is already within the public domain. It is well-settled that a Rule 26(c) protective order is subject to modification, and a "decision to modify such an order is 'committed to the sound discretion of the trial court.'" In re Visa Check/Mastermoney Antitrust Litig., 190 F.R.D. 309, 313 (E.D.N.Y. 2000) (quoting In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 147 (2d Cir. 1987)). Neither the Government nor Plaintiffs have provided the Court with any authority as to how the Court should proceed in considering the Government's application to modify the protective order.

The leading Second Circuit case establishing the standard for modification of a protective order in the context of non-party governmental intervention is Martindell v. International Tel. & Tel. Corp., 594 F.2d 291 (2d Cir.

1979). In that case, the United States intervened and asked the Court to permit it access to deposition transcripts which were covered by a court-approved confidentiality agreement. The court therein ruled that "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need," a protective order should not be vacated or modified at the government's request. Martindell, 594 F.2d at 296. The Second Circuit employed a balancing test which weighed the public interest in obtaining all relevant evidence to be used in the criminal prosecution versus the vital function of a protective order to secure the "just, speedy, and inexpensive determination" of civil disputes. Id. at 295. The situation presented, here, however, is quite different from that in Martindell. Here, the government has intervened with an interest in keeping certain information confidential, whereas in Martindell the government intervened with an interest in gaining access to certain information.

Moreover, the Protective Order at issue here did not specify the substance of the interrogatories, other than that they comply with Rule 26(b) and the Court's directions at the July 8, 2005 hearing. The court's direction therein was that the interrogatories seek information "that's reasonably calculated to lead to the discovery of admissible evidence," (Hearing Transcript at p. 47) (hereinafter "Tr."), and that Plaintiffs were "entitled basically to who knew

7

information relative to a claim or defense, and when they knew it." (Tr. at p. 50). The court therein further stated that it would not "make a perspective [sic] ruling on whether or not an interrogatory that hasn't been propounded yet satisfies that requirement." (Tr. at p. 47).

Now that the Plaintiffs' interrogatories have been propounded, the Court is in the awkward procedural posture of being asked to modify a protective order of very little substance and in essence address objections to the interrogatories. Given this posture, the Court is of the opinion that it has wide latitude in determining whether the Protective Order herein should be modified at the Government's request. In making such a determination, the Court is guided by other decisions in this Circuit which, although in the context of deciding whether to modify a protective order for private reasons, have employed a multi-factor test in deciding the appropriateness of a modification to a protective order. See, e.g., Bayer AG and Miles, Inc. v. Barr Laboratories, Inc., 162 F.R.D. 456 (S.D.N.Y. 1995) (employing four part test to determine appropriateness of modification to a previously stipulated protective order for private reasons); H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc., 106 F.R.D. 551 (S.D.N.Y. 1985) (employing four part test to determine appropriateness of modification to protective order to provide information to New York and Texas Attorneys General). These courts have considered such factors as: (i) good cause

8

for the modification or continued confidentiality; (ii) the nature of the protective order; (iii) foreseeability of the requested modification; (iv) reliance on the protective order; (v) the pendency of other litigation; and (vi) the government's role in the dispute. See Bayer, 162 F.R.D. at 462-63; Hayden, 106 F.R.D. at 554-56. See also Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 499 (S.D. Iowa 1992); Pellegrino v. United States, 1192 U.S. Dist. LEXIS 5129 (S.D.N.Y. April 15, 1992).

  Magistrate Judge Kaplan determined initially that there was good cause for the Protective Order. Thus, the burden is on the Government again to show good cause for modification. Bayer, 162 F.R.D. at 463. Here, the Government has demonstrated good cause for the modification. As the Government contends, the disclosure of non-public information at this stage would be severely damaging to the pending criminal case against Kumar and Richards. The information sought by Plaintiffs' overlaps with and is substantially broader than the information currently available to the criminal Defendants. Disclosure of such information would potentially "provid[e] a road map to the Defendants in the criminal case." (Tr. at p. 39). Under these circumstances, "the court is obligated to prevent th[e] criminal defendant from 'using parallel civil proceedings to gain premature access to evidence and information pertinent to the criminal case.'" Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)

(quoting S.E.C. v. Doody, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002)). The Court recognizes that it is not the criminal Defendants who have sought the information, but notes that once the information becomes a part of the record in this matter, the criminal Defendants would have access to it.

The other factors noted above also weigh heavily in favor of granting the requested modification. As for the nature of the Protective Order, it is a broad order that was court imposed and not stipulated to by the parties. As such, there has been little reliance, if any, upon its terms. Moreover, it was reasonably foreseeable at the time of issuance that there would be a request for modification. As for the pendency of other litigation and the Government's role, the indictment against Kumar and Richards charges them with a most egregious scheme to defraud investors and the public, and then to engage in a wide-ranging conspiracy to obstruct justice and conceal their scheme from the Government. The Court certainly appreciates the public interest in effective enforcement of the criminal laws when confronted with such allegations.

After considering these factors as well as the Martindell standard, the Court is of the opinion that there is a compelling need for the modification of the Protective Order, as requested by the Government. Accordingly, the Court grants the Government's letter motion and orders that the responses to the Special Interrogatories to CA are limited to: (i) facts admitted in the public Informations

against and guilty-plea allocutions of the former CA employees who had already pleaded guilty in the related criminal case, and (ii) facts contained in the Second Superseding Indictment against defendants Kumar and Richards. The public interest in such a modification far outweighs the Plaintiffs' interest in securing the "just, speedy, and inexpensive determination" of its civil dispute. See Martindell, 594 F.2d at 295.

C.     The Deposition Notice

In its second motion under Rule 26(c), the United States seeks an order staying the Derivative Plaintiffs' Rule 30(b)(6) Deposition Notice until the conclusion of the criminal trial of CA's former CEO and head of worldwide sales. Neither party disputes the Court's discretionary power to stay proceedings as an incident to its power to control the disposition of cases on its docket. See Beard v. N.Y. Central Railroad Co., 20 F.R.D. 607, 609 (N.D. Ohio 1957) (granting a stay of responses to interrogatories until the conclusion of a related state court action). The Court is mindful of the fact that a total stay of civil discovery pending the outcome of related criminal proceedings is an extraordinary remedy. Weil v. Markowitz, 829 F.2d 166, 174 (D.C. Cir. 1987). Nonetheless, in this Circuit, the balance weighs in favor of staying a civil proceeding when the criminal investigation has ripened into an indictment. See United States v.

Certain Real Property, 751 F. Supp. 1060 (E.D.N.Y. 1989); Corbin v. Federal Deposit Ins. Corp., 74 F.R.D. 147 (E.D.N.Y. 1977). In addition, there is a preference for withholding from criminal defendants information that they would not have been entitled to under criminal discovery rules but would have been able to obtain through civil discovery in related actions. See United States v. Linen Supply Institute of Greater N.Y., et al., 18 F.R.D. 452 (S.D.N.Y. 1955); United States v. A.B. Dick Co., 27 F. Supp. 337 (D. Or. 139); SEC v. Chestman, 861 F.2d 49 (2d Cir. 1988); In re Ivan F. Boesky Sec. Litig., 128 F.R.D. 47, 49-50 (S.D.N.Y. 1989).

In evaluating a request like that of the Government to stay civil proceedings, courts attempt to balance: (i) the extent to which the issues in the criminal case overlap with those presented in the civil case; (ii) the status of the criminal case, including whether the defendants have been indicted; (iii) the private interests of the movants in proceeding expeditiously versus the prejudice to the movants caused by the delay; (iv) the private interests of and burden on the defendants; (v) the interests of the courts; and (vi) the interests of the public. In re Worldcom, Inc. Sec. Litig., 2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002) (citing numerous cases employing five or six factor test); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992). Courts balance these competing interests on a case-by-case basis. See United States v. Downe,

1993 WL 22126, at *14 (S.D.N.Y. Jan. 26, 1993); Volmar Dist., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993); Horn v. District of Columbia, 210 F.R.D. 13, 15 (D.D.C. 2002).  A balancing of these factors herein leads the Court to the conclusion that the equities weigh in favor of granting the stay.

With respect to the status of the criminal case, Kumar and Richards have both been indicted by a federal grand jury and are awaiting trial. According to the Government, this trial is scheduled to begin on April 24, 2006. The issues presented in the criminal case are essentially coterminous with those presented in the Deposition Notice.  The Deposition Notice requests, inter alia, evidence supporting the Information filed against CA, evidence regarding the DPA entered into between CA and the Government, and evidence underlying the Superseding Indictment against Kumar and Richards.  All such evidence overlaps with the evidence that will be presented in the prosecution of the criminal case. The Derivative Plaintiffs correctly note that "a stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter."  Crawford & Sons, Ltd. v. Besser, 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004).  In arguing against a stay on this point, however, the Derivative Plaintiffs' analysis is incomplete.  They contend that, because they do not intend to depose either Kumar or Richards, there is no risk of self-incrimination and thus no harm in the matters proceeding concurrently.

The Government draws the Court's attention to a whole host of concerns that arise should the deposition proceed. As the Government contends, any individual in a position to address the subject matters covered in the Deposition Notice is likely to be a witness for the Government in the trial against Kumar and Richards. This witness's usefulness to the Government will be impaired if he or she were subjected to deposition. Any such witness risks violating the terms of the DPA or instead being placed in a position where he or she would have to invoke the Fifth Amendment protection against self-incrimination. Furthermore, early disclosure of such evidence would provide the criminal Defendants with the opportunity to manufacture evidence, tailor their defenses to the Government's proof, and/or destroy corroborative evidence.

Moreover, granting the stay of the Deposition Notice in the instant case will not unduly prejudice the Derivative Plaintiffs, and may in fact, advance their private interests. Disposition of the criminal trial before the civil discovery requested by the Derivative Plaintiffs will serve to resolve common issues of law and fact and consequently narrow the scope of civil discovery. See United States v. Mellon Bank, 545 F.2d 869, 873 (3rd Cir. 1976); Brock v. Tolkow, 109 F.R.D. 116, 120 (E.D.N.Y. 1985). In addition, as the Government points out, it is unlikely that any CA representative would possess the information concerning the relevant factual issues, as most such persons have been terminated by CA. Those

persons in possession of such information have either been indicted or are cooperating with the Government and are likely to testify in the criminal trial. Also, the information that is currently within the public domain, as discussed above, provides a sufficient basis for addressing the factual issues the Derivative Plaintiffs seek to resolve.

Similarly, with respect to the potential prejudice to the Plaintiffs, and consequently the Derivative Plaintiffs in this Court, the Court is not persuaded by the reasons articulated by Plaintiffs' counsel during the July 8, 2005 hearing in the District Court for the Northern District of Texas. The court therein inquired of Mr. Widell, "What's your hurry? . . . So the hurry is you've got a rich guy and he wants to go first?" (Tr. at p. 23-24). Mr. Widell responded, "He has the resources that match those of the Government . . . he doesn't need to rely on the Government to make his case. . . . He wants to get richer." (Tr. at p. 24). When prompted further, Mr. Widell stated that the harm his clients would suffer was really in the nature of a loss of "momentum," and that there was no foreseeable danger that evidence would be lost. (Tr. at p. 25). The Court acknowledges that the Derivative Plaintiffs are "entitled to vindicate their rights," (Pl.'s Opp. Mem. at 17), but is also cognizant of the fact that in some instances one's interest in "getting richer" must take a back-seat to attempting to hold criminally responsible the perpetrators of, as Mr. Widell argued, "a massive

15

accounting fraud perhaps in, you know, the 20th and 21st century, one of the biggest ones . . . ." (Tr. at p. 24).

In light of the above discussion, the interests of the courts and the public in granting the stay requested by the Government should be obvious. Such a stay is likely to economize judicial resources by narrowing the factual and legal issues before the Court in the civil litigation. Notably, as the Government points out, criminal convictions of Kumar and Richards would certainly facilitate a settlement of their civil liability. In addition, the public has an interest in the effective enforcement of the securities laws. See, e.g., Volmar District, Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 40 (S.D.N.Y. 1993).

### Conclusion

For the reasons discussed above, the motions of the United States are **GRANTED** under FED. R. CIV. P. 26(c). The Protective Order is hereby amended to limit CA's responses to the Special Interrogatories to information that is contained in the public Informations against and guilty plea allocutions of CA employees and in the Second Superseding Indictment of Kumar and Richards. Furthermore, the Court hereby stays Plaintiffs' requested Rule 30(b)(6) deposition until the conclusion of the trial in United States v. Kumar, et al., 04-CR-846 (E.D.N.Y.) (ILG).

**SO ORDERED**.

s/s Thomas C. Platt
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
       November 30, 2005